Case is also a mess. May it please the Court, I'd like to reserve five minutes for rebuttal. If the Supreme Court's decision in Mensing and Bartlett mean anything, it's that where preemption and pretrial disposition are concerned, the courts are required to examine carefully and analyze in detail the very distinct state-specific claims asserted. They cannot paint with a broad brush when the end is denying catastrophically injured plaintiffs the right even to pursue a claim. Yet, unfortunately, that's exactly what the trial court did here. Now, since the last brief was filed in this case, the Supreme Court has ruled in Bartlett and a number of other courts in other states and circuits, including this one, and as of Monday night, the appeal in the Philadelphia MDL for Reglan has ruled on issues raised in this case. We intend to supplement on that as soon as we've read through them all. We just got them very late that night. So what I'd like to do— You rely on the First Circuit's decision in Bartlett. That's been reversed. Yes, we do, but I think— So that argument's gone, right? Not exclusively. What the Court said in Bartlett, Your Honor— Excuse me, Your Honor, I think my time is correct. I reserve five minutes, and this is a 20-minute argument. Yeah, it is a 20-minute argument. You asked about Bartlett. What the Court said in Bartlett was not that there is a blanket restriction on or blanket preemption of strict liability claims. Instead, it said that you had to look at them very carefully and that the New Hampshire statute— in fact, it specifically says that you have to look at the nature of the duty in the state law. So what we think should be involved is that the Court should look at the nature of the state duty. As a practical matter, I think if the New Hampshire statute is out, probably the Tennessee statute is out. But I think it's going to be up to the Court to look pretty carefully at that. Okay. I mean, I thought the Bartlett argument, at least in your brief, was probably your strongest. And now that's basically gone. You said as a matter of state law, they could just refuse to stop selling— Right. That piece of it, I think, is— What I'd really like to talk about today, I think, are the two remaining claims, although I think, again, Bartlett counsels on a very careful look at those claims, and I think that— Just on one point, doesn't Bartlett sort of kill your request to certify the question of the Tennessee Supreme Court? Well, to certify that question, I mean, this Court obviously can certify other questions. And frankly, we're a little bit concerned. The two things that I wanted to talk about today are the failure to communicate claims, which we think are still viable, and second, the brand name claims. I have some concern that the trial court, in ruling on the claims for the brand names, was hesitant under Erie to do what she thought was making new law. We don't think that you have to make new law under that course. But what we would advise the Court to do is, if the Court is concerned about doing something that is, you know, out of the ordinary in Tennessee, that it certify that question, and the Court has the ability and has in the past to certify sui sponte or pursuant to the question. Right, right. Well, if the Court has that hesitation. What I'd like to do today is to talk about kind of what's left, because there's been a lot of movement here. We are dealing with a moving target here. And talk about the Court's decision in Fulgenzi and the failure to communicate and to update claims that we've asserted in the petition. We think that Fulgenzi is directly on point and governs here. It's a Reglan case, unlike the panel in Smith, under which I understand Judge Gilman participated. The Fulgenzi Court considered the same failure to communicate claim that's in this case. The failure to update, and that's, let me be very specific, is the failure to update the generic labels after the 2004 Reglan label change and to communicate that claim. It's not the claim regarding communication of a different warning prior to 2004, which is the one that the generic defendants have addressed here. Is there anything in the record as to when the plaintiffs in this case took the drugs? No, because this is on a motion to dismiss, and what would be appropriate for the Court to do is to remand the case back to determine exactly when they took the drug and what the dates of usage are. That's the problem with — It's not specified in the complaint? I mean, it is specified in the complaint, but there's no evidence other than just the allegations of the complaint. What is the complaint alleged, then, as to when they took the drugs? I don't know. Since there are so many plaintiffs, I can't list them all, but I'm not sure that it lists the dates of usage. I'm not sure that it does. I don't recall them listing dates of usage. No, and I don't think they do because there's been no discovery in the case. Again, what the generic defendants have asked for here is a blanket prohibition, no matter when they used the drug, and that's the problem that we've got, is that there are going to be some. Admittedly, there are going to be many that are not going to fall within this gap period, but we think that the people that do fall within the gap period ought to have a right to pursue their claims, and so what's appropriate is to remand the case for, you know, allowing us to put that evidence in the record. Yeah, but I mean, it would be to amend the complaint, wouldn't it? Well, I'm not sure it has to be in the complaint, but we could amend the complaint to put it — Well, I think if the time frame is critical to whether you have a claim upon which relief could be granted, that it's got to be in the complaint, and if it's not and the time is critical, I don't know how you have a viable — Well, that's correct, Your Honor, and as I say, we are dealing with a moving target here in what happened after the mensing case. I don't know, but we're still dealing with the complaint. Well, that's correct, and so as I say, what would be appropriate is to go back and talk about, you know, and to put evidence in the record or to amend the complaint, and that's exactly what the court allowed us to do after mensing. But, you know, we were dealing with the world as it existed after mensing but before Bartlett. Again, I'd like to maybe move back to those claims. Well, we're dealing with the world as it exists today, and that's how we're ruling. We're not going to rule as to what the law was five years ago or whatever. And that's what I'm saying is that the plaintiffs ought to have the same luxury, which is to basically say that, you know, what the law is now post-Bartlett is what they, you know, should be allowed to plead around. No, you can't change your cause of action later because the law gets changed. Your Honor, they haven't pleaded their cause of action. All of them have pleaded that there was a failure to update, a failure to communicate during that period. But what is not in the complaint, and frankly what I'm not sure needs to be in the complaint, is what their dates of usage are. I don't know of any court in the country that has required that to be in the complaint. That's usually been in the form of a motion for summary judgment that has been filed because it would require evidence. I mean, even if it's in the complaint, it's still going to require evidence unless it's an admission. So I think that's the appropriate form and not a motion to dismiss where there's really not any evidence. I think that the Tennessee law encompasses the failure to communicate, which we have alleged. And those plaintiffs that have claims that fit within that period, and in a motion for summary judgment you would find out who those were, would be allowed to pursue those claims. Is there a problem even with Fulgenzi there about the learned intermediary exception doctrine? I mean, do we know from the facts? Did the doctors for some of the plaintiffs prescribe Reglan, and in fact the generic was substituted, but if they prescribed Reglan they would presumably have used the label? Your Honor, all of those issues as to what they relied upon, what they used, and that sort of thing, it's usually what comes out in a trial that is not usually something that's pleaded in the cases. But with regard to your particular question about the learned intermediary doctrine, it really wasn't raised in this case. I know it's come out in a couple of other cases. But I don't think it really has any effect except on approximate causation when you talk about what the doctor relied upon. Did they rely upon, say, the brand names label, or did they rely upon the label supplied by the generic drug? Right, but I guess the point is in a couple of these other cases you mentioned they say, look, even if the drugs were taken during a time that a generic manufacturer should have upgraded from 2004, that it was no harm because the doctor didn't rely on that gap. Well, again, that's a question of approximate causation, not preemption. And that's our point here is that you shouldn't preempt those claims without giving the plaintiffs an opportunity to fit themselves within those claims. With that, I'd like to move on to the second question that we're talking about, which is the question of brand name liability. We think that when you sort everything out, that the trial court actually violated the Erie Doctrine. The court was concerned about violating the Erie Doctrine by allowing the claims to go forward. We think that the court actually violated the Erie Doctrine by not allowing them to go forward and imposing really a blanket privity requirement under the Tennessee Products Liability Act and Tennessee Law of Negligent Representation that just isn't there. First, the court really misapplied the TPLA. We supplemented the record with cases that demonstrate that the substantive provisions of the TPLA talk about claims against manufacturers and sellers. And the brand name defendants in this case have done a lot of discussion and cited all of the substantive provisions that deal about claims against manufacturers and sellers. And they conclude that that means that there is some blanket privity requirement. It doesn't. And one of the cases that they cite says it doesn't. And what they say is that, and the Gaines case that we supplemented with, what they say is that when you don't qualify as a manufacturer or seller, which is exactly the claim that they make, the TPLA doesn't apply to you. And that's a pretty simple concept. So under that, we consider that the TPLA doesn't apply here. If the TPLA doesn't apply, then we simply go under Restatement Rule 552 under a negligent misrepresentation claim. And that's something that this court has done. There's a case called Agristore Leasing, 869 F. 2nd at 264, where the court considered both a TPLA case and a 552 case in tandem. The court has cited to— Help me understand why the generic language in the TPLA that it covers, in addition to the enumerated list of theories, claims brought under any other substantive legal theory in tort or contract. Your Honor, that's the definition of a products liability claim. But the substantive provisions of the Act say in a products liability claim brought against a manufacturer or seller. It doesn't apply to all products liability claims. And so the way that it's been interpreted in Tennessee is that unless you qualify as a manufacturer or a seller, it doesn't apply to you. And so in the Langford case that they cite, a purported manufacturer, because he couldn't prove that he qualified as a manufacturer under the Act, it was held that the law didn't apply to him. Same thing was true in the Gaines case. They actually treated the same defendant. They allowed some cases to go forward where they acted as a manufacturer, but the case in which it acted as an inspector, they said no, because they weren't acting as a manufacturer or seller, it didn't apply in that case. So they allowed the claims to go forward. What I'd like to do then is to talk about whether the TPLA applies or not. We don't think it does. The court really made a mistake in applying this blanket privity requirement in violation of Tennessee law, because Tennessee has a statute which we attach to our original brief in the case, Tennessee Code 29-34-104, that outlaws privity. It says, in all causes of action for personal injury or property damage brought on account of negligence, strict liability, or breach of warranty, privity shall not be a requirement to maintain such an action. And that's the law in Tennessee. The Tennessee Supreme Court has repeatedly reaffirmed that law. In fact, in some of the cases, same cases, that the Tennessee trial court or the federal trial court here cited. In the Ritter case, for example, it says, in response to the second certified question, privity of contract is not essential to a tort action of negligent misrepresentation based on information negligently supplied for the guidance of others. In the First National Bank of Brooks Farms case, which we supplemented on Monday, the court said, quote, where there are no direct contractual relations between the purchaser and the manufacturer, in a situation where the purchaser has relied on the manufacturer's booklet and trade name in making the purchase, we have concluded that the manufacturer should be liable in this situation. While this holding represents some development in the law, we believe that this development is needed to keep pace with modern conditions and is supported by substantial legal authority throughout the country. That's the Supreme Court of Tennessee. Now, it seems inconsistent. You've had a ton of cases cited by them on this privity requirement. And then you have these very clear directives from the legislature and the Tennessee Supreme Court. And the way, the only way that you can reconcile them is an admission that they made on page 15 of their brief. And that is that the question is not a broad ban on privity, a broad requirement of privity in the TPLA. It basically comes down to proximate causation. That's all it turns on. And proximate causation varies from claim to claim, from case to case, and from state to state. How do you distinguish R. Smith v. Wyeth? I mean, other than Smith was in Kentucky's Product Liability Act, but is it any really different from Tennessee? Yes, it is. It has the same definition of product's liability, and that's what everybody focuses on. But the definition of manufacturer and seller is very different. And I checked on Monday. Kentucky does not have this blanket privity, you know, abolition. And so that makes it very different. So there really wouldn't be a circuit conflict here because you're really dealing with a different statute. Well, because in Smith we held that the threshold requirement to make the brand manufacturer liable is that the plaintiff purchased the brand manufacturer's product. Right. But you did so under Kentucky law. Did it rise and fall under Kentucky law, or did it rise and fall under federal law? I think it rose and fell under Kentucky law, as I understand it. I didn't see it as an interpretation of Kentucky law. Well, the preemption always is based on the question of what's the duty under state law. And actually, I'd like to talk about that a little bit, except for I think that the Tennessee courts have already really interpreted it exactly the way I've described it. The Traveler's Indemnity case that they cited, their brief at 14, allows a product defect case to go forward, you know, a traditional product's liability case to go forward based on proximate causation and privity. But when they filed a motion for summary judgment for a breach of warranty claim, based on lack of privity, they denied that motion for summary judgment. In the few seconds I have remaining, I'd like to talk about the reason why this case is different from Smith and the specific duties under state law would allow this case to go forward. There are really two sources of the duty. One is federal, one is state. The first is the post-mensing FDA regime that we discuss in detail at page 40 to 43 of our brief. But I think you can see this most clearly in looking at a federal regulation. It's a very quick one, 21 CFR 314.3b, that I looked at last night, and the court can take judicial notice of it. It says when it defines a reference-listed drug, because that's what we're talking about here, is whoever holds the RLD or who is the brand name manufacturer, it defines a reference-listed drug as the listed drug identified by the FDA upon which the applicant relies in seeking approval of its abbreviated application. In other words, it is the FDA-appointed quarterback. Nobody moves on the field. The generics cannot move to change their label until the RLD holder or the brand name changes their label, and that's the post-mensing regime. When you combine that with the generic substitution laws, which I sent the court on Monday, so you can really see how difficult it is for a doctor to avoid generic substitution, you can see that there is clear foreseeability and, therefore, a clear duty on the part of a doctor to move forward with these cases. Now, that means that the ordinary operation of negligent misrepresentation law doesn't have any impediment here. In fact, if you look at the Ritter case, which is cited by the court, they list all of the circumstances in which 552 has been applied. Let me give you part of the list. It's been applied without privity to a construction manager, an accountant, a pest control company, a surveyor, a seller of a log home kit, and a landlord. So the appropriate question, I think, to ask here is not, why would a Tennessee court extend the doctrine of negligent misrepresentation and a claim of negligent misrepresentation or fraudulent misrepresentation to brand name manufacturers? But the question, I think, that's more appropriate is, why would they immunize brand name manufacturers from the normal operation of misrepresentation law, especially where the U.S. Supreme Court in Levine didn't? And in that respect, I think the court could look at Kellogg, Conte, and Week. Well, wait. In Levine, they took the brand manufacturer's drug. Right. But what I'm saying is that they did not immunize. They understood that brand name manufacturers, because they had the ability to change their label, should not be immune under doctrines of preemption. And so what the trial court here did was essentially confer that immunity on them by immunizing them from negligent misrepresentation cases. And if you look at the justification for Kellogg's, for Conte, and for Week's, it's all about this proximate causation issue. For example, in Kellogg, they say, to recognize that a brand name manufacturer owes a duty to use reasonable care to avoid causing injury to consumers of generic bioequivalents of its drug does not recognize a new cause of action or an existing one, an activity inappropriate for a district court sitting in diversity to undertake. Just the concern that the court here had. It continued, the broader public policy issues are worthy of debate, but unnecessary for determination whether Kellogg's claims against Wyeth as a brand manufacturer can proceed. This court has simply applied basic precepts of Vermont's negligence law to ascertain whether a legally cognizable claim exists and has concluded that it does. What authority can you cite us that has held the brand manufacturer liable where the drugs purchased were generics? Conte, Week's, and Kellogg. That one from California? Yes. California Court of Appeals? California Court of Appeals. That was rejected by this court, wasn't it? We have precedent saying, well, yeah, we know it's out there. It's an outlier. Well, it isn't an outlier except for, actually, it was an outlier at the time, but the law has actually caught up with it. Conte was decided not on some broad principle of preemption. It was decided on proximate cause, exactly what the defendants in this case say is really the issue here. In that case, they said there's a problem here, and that is that if you have someone taking a generic drug whose doctor relies upon the brand names, labeling, or representations, they can never make proximate causation and, as a result, are absolutely barred from recovering against the generic manufacturers. There's a problem with the argument. Our court in Smith specifically rejected the Conte case, and we stated, as have the majority of courts to address the question, we reject the argument that a brand name drug manufacturer owes a duty of care to individuals who have never taken the drug actually manufactured by that company. And we cite the great overwhelming majority of cases collected by the Fourth Circuit and the other cases, and we go in that camp. We reject Conte. You just told me you rely on Conte. Well, Conte has been rejected by our court, and we have no power to overrule it. Your Honor, no. That's not all that we rely on. Number one, it was Kentucky law. The duty— Well, okay, but that's the only authority you say to support the Conte case. No, Your Honor. All the other courts have gone the other way. No, Your Honor, they have not. The Weeks case in the state of Alabama, it was a certified case, a certified court, and these are all post our briefing in this case. The Weeks case in Alabama was a certified question from a federal court that asked this specific question. They found a duty under Alabama law. The Kellogg case— You still have five minutes rebuttal. You can use it now. No, that's fine. You can save it. Any further— May I ask one question? Sure. The regulation that you cite to us, when was that effective? I'm not sure, but it's been in effect for a long time. For a long time. So it would cover— Yes, I assume it covers this one. Your litigation. Yes, that's correct. Do we have the defendants allocated their time? Yes, we have, Your Honor, and I'll address that. Thank you, Your Honors. I'm Richard Otheimer. I'm counsel for Defendant Teva Pharmaceuticals. I'm going to speak first on behalf of the generic defendants. I should say the generic defendants other than the PLEVA-BAR group of defendants, and I will have eight minutes. Mr. Peck will follow me. He also represents generic defendants. He represents PLEVA and BAR. PLEVA was the defendant of Fulgenzy, and he will speak for six minutes. Mr. Bullock will go last. He represents the—or is speaking for the brand defendants, and he will also have six minutes. All right. Very well. Thank you. Thank you. Your Honor, obviously we've discussed mensing and Bartlett. There are obviously only three things a manufacturer can do theoretically to make a drug safer to avoid liability for selling an unsafe drug, change the design, change the label, or stop selling the drug. Mensing, 2011, held warning claims preempted because generic manufacturers cannot change the labeling. Bartlett held preemption applies to a design defect theory because generic manufacturers likewise cannot change the design. In fact, no one can change the design of a drug. The molecule has whatever inherent risks it has, and the only way to make the drug safer is to change the labeling, which mensing holds that generic defendants cannot do and cannot be sued for. Bartlett also held— Does it make a difference to your argument what the underlying state law design defect claim is? I don't believe it does, Your Honor, but I also believe that— Why would it not if what you're looking to is the underlying law that creates the duty? One state might have created a cause of action that can be pursued and another state may not. Wouldn't it vary by the particulars of each state's law? What the Bartlett court says is that if the state law imposes a duty on the defendant, any duty, Bartlett has a footnote that says, if liability were truly absolute, that might not raise impossibility preemption, but any state law that involves a duty— Tennessee Product Liability Act has a duty not to sell or imposes liability for selling an unreasonably dangerous drug. That is foursquare Bartlett. In fact, I credit counsel for conceding that. In their reply brief, they said the Tennessee law was virtually identical to the New Hampshire law in Bartlett, and it is, and Justice Alito's opinion for the court in Bartlett said unreasonably dangerous is the same as imposing a duty to sell a safe drug. He said mensing, for that matter, could be characterized as a duty not to sell a drug without adequate labeling. The point is the defendant to manufacture under state law would have a duty to make the drug safe, to make it not unreasonably dangerous, to make it safe. That can only be done by doing something federal law prohibits generic manufacturers from doing, changing either the design of the drug or the labeling of the drug. And as to drugs, really, the only thing that can be done is to change the labeling to make the warning adequate or that is stronger. So I understand counsel basically to concede that the Bartlett decision undercuts their reliance on the First Circuit's decision in Bartlett and leaves them without a stop selling argument, which was one of the three arguments in their summary of argument that they had advanced. I didn't hear the first. There was a second argument that I didn't hear made today, and I think has therefore been abandoned, which is that there could be a state law duty to ask the, if the generics cannot change the label, there could be a state law duty to ask the FDA to change the label. Mensing addresses that, too. That issue was in Mensing. And Justice Thomas's opinion for the court there said that that's not a matter of state law concern, defendant's communication with the FDA. There's also no argument that that is what Tennessee state law requires. The Tennessee Products Liability Act imposes liability for selling an unreasonably dangerous drug, and it doesn't say that state law would be satisfied by asking the FDA. But the Mensing court went through this analysis and held any claim based on not asking the FDA to change the label, even assuming such a duty is preempted. Plaintiffs are left with, I think, only one argument that they made in their brief that they're still making against the generic defendants, and that is what they just called the duty to communicate. Although, as I heard it described in argument, it sounded like a duty to have the same, a duty to update the label after the brand label. There was a change to the brand label in 2004, as the court knows. That assertion that there was a failure to update the label, that assertion was not made by the plaintiffs as to any of the generic companies that I am arguing for today. Both in the briefing in district court on the motion to dismiss and in the appellate briefing, the only assertion that plaintiffs have made is that a single generic defendant, PLEVA, did not update its label to incorporate that change. Mr. Peck will speak for PLEVA. And I'll refer the court specifically in plaintiff's opposition, and I think I'm referring to Strayhorn, the lead case, but they're all the same, obviously. In their plaintiff's memo in opposition to the motion to dismiss in district court, document number 87, at page 13 of 25. It's in the addendum at page 1582. The statement there is specific to PLEVA, and also in plaintiff's principle brief on appeal at page 27. It's verbatim the same statement that was made in the district court briefing. There's been no assertion that any other generic defendant in the case failed to same the issue that was in Fulgenzi. There's an assertion in the complaint, is there not? In paragraph 87L of the complaint, there's a very vague general assertion that defendants failed to update their labels. There are no facts pled. I don't think it would satisfy Iqbal Tambly pleading. And to answer a question that I'm not sure if it was Judge Gilman or Judge Griffin asked, there are no allegations in the complaint as to when any plaintiff used metaclopramide or whose metaclopramide they used, and there's no allegation that the failure to update the label or to communicate the 2004 label change caused injury to any plaintiff. But I think as to Teva and activists and the other generic defendants who I'm arguing for, the argument simply has not been made, and I know that there's many precedents I could cite from this court that issues that are not raised before the district, arguments not made before the district court, not made in plaintiff's principle brief on appeal, or for that matter in the reply brief, those arguments should not be certainly entertained as to any of the defendants that I'm arguing for. The, to the extent, and I did not hear it today, but to the extent that plaintiff argues a duty to communicate, meaning something other than updating the label, for example, a dear doctor letter to doctors, I think that is foreclosed first by Mensing, page 2576, foreclosed by this court's decision in Smith. That specific argument was made in the briefing in Smith when, after the Smith court ruled, plaintiffs filed a petition for rehearing and said the court had overlooked that argument, and the Smith court, Judge Gilman sat on, denied the petition for rehearing and said all of the plaintiff's arguments had been considered, and that has been the decision both of the Fifth Circuit earlier this year in a case Morris that I argued and the Eleventh Circuit in a case Guarino both agreed with this court and rejected that claim that there is some, that generics have some duty to go beyond the labeling and to communicate directly with doctors. What about the Eighth, recent Eighth Circuit case in Fullington v. Pfizer that remanded a design defect claim? I think it was because the Arkansas Consumer Expectation Test leaves a question, and it was remanded by the Eighth Circuit to determine whether a generic drug manufacturer could somehow alter or otherwise affect an unreasonably dangerous drug. I would seem out of time, but if I may answer that question very succinctly, I think that case will be, the Eighth Circuit did remand on that issue for Arkansas law. I think there is no doubt in my mind that the district court will have to dismiss that claim again. But the question is it was remanded on the very issue that you say is resolved on the design defect question. So I'm struggling with why you can take the position that everyone is uniformly behind your argument if we have a recent remand by the Eighth Circuit. Well, I don't agree with the remand, but I'll also distinguish it. The Consumer Expectation Test, which they remanded for consideration, under Tennessee law, Tennessee Product Liability Act looks at both the Consumer Expectation Test and the Reasonably Prudent Manufacturer. The Consumer Expectation Test, though, does not apply to complex products. I'm going to forget the name of the case, but I know Judge Gilman authored an opinion for this court in 2006 where it said the Consumer Expectation Test did not apply to a forklift. Judge Anderson below said it doesn't apply to a prescription drug since consumers don't really have expectations about what the drug does or doesn't do. Tennessee recognizes the learned intermediary doctrine. So I think the court below was right to say that the Consumer Expectation Test does not apply to prescription drugs. It's the Reasonably Prudent Manufacturer Test, which embraces or involves risk-utility analysis of the product, which is exactly the same as the New Hampshire law that the court applied in Bartlett, which is why the plaintiffs here conceded that Bartlett forecloses their claim under the Tennessee Product Liability Act. So, one, the Consumer Expectation Test is not the test that would apply in this case. But I think that the Eighth Circuit did not need to remand because whatever state, and we can take those tests or we can invent one that nobody's thought of, if the generic manufacturer cannot redesign the drug under federal law, can't change the drug because the brand drug is the basis of its approval and can't change the labeling, then the only thing a generic manufacturer could do to avoid liability and to not have that drug cause injury is to not sell it. That's the only thing it can do. How do you respond to the, I guess we could call it the fairness or the equity question, that you've got people who have been prescribed perhaps the brand-name drug and they're in a state that automatically converts that to the generic. And they suffer what is, I know you will concede, are horrible illnesses. Tardive dyskinesia is a terrible neurological illness. And they have a complaint or a cause of action by the mere happenstance of whether they took the generic version or they took the brand version. There's no question. Obviously, Judge Stranch, I wouldn't for a moment. I've seen some of these plaintiffs. I've defended other cases. It can be a horrific injury. We don't know about these particular plaintiff's injuries, but clearly it's a horrific injury. And there is an issue, and both the Mensing Court and the Bartlett Court recognize that. The last paragraph of Justice Alito's opinion for the court in Bartlett says that again, that this seems harsh and it certainly seems, I think Justice Thomas in Mensing says it doesn't, on one level it doesn't make any sense that people's rights should depend on whether their prescription was, whether they were dispensed the generic drug versus the brand drug. And both decisions have said, you know, Congress can step in and legislate. The FDA can try to do something. There have been bills introduced in Congress since Mensing. They have not been enacted. The FDA has said it may propose rulemaking. Certainly in time perhaps there will be some adjustment of that, but this court, just as the Supreme Court in Mensing and Bartlett, has to apply the law as it finds it. So I'm not here to say that it's fair. I'm here to say it's the required result. There's no argument that the law is unconstitutional. That argument certainly has not been made. Thank you. Good morning. Jeff Peck for PLEVA. Just to follow up on one point that you asked about with Mr. Odenheimer, which is the consumer expectation test. I do have the cite to Tennessee court that said that that doesn't apply. It's the Wray v. Bitt Corporation, 925, Southwest 2nd, 527. That's one that said consumer expectation test doesn't apply. And you think Fullington v. Pfizer is the rationale that that court undertook is wholly limited to the consumer test as opposed to a development in the law that is beginning to analyze the underlying state cause of action differently from what it's perhaps been in the past? I would say this, Your Honor, that it is limited to the consumer expectation test because that's what the Eighth Circuit said. The point is, though, that you have to look at what the action items are that can be taken to mitigate the risk. Unless you are going to say that we're under an absolute liability regime, which, no, I don't think any state says, and Tennessee clearly doesn't say that, then you're back to only three things that can be done, okay? And one of them you physically can't do. You cannot change the drug. You can't change the molecule because if you do that, it becomes a different drug. So it's a physical impossibility. From that standpoint, it doesn't matter if you apply the consumer expectation test or a risk utility analysis or some other nomenclature for those two things. Those are the two general basic tests that you see. And then there is the issue, the second thing you can do is change the warnings. That's dealt with by Bartlett and Menzing. And the third thing you could do is take it off the market. And what the Supreme Court has said unambiguously, and I think this Court said in Smith, is that that's not a solution to the problem. You can't avoid preemption, escape preemption, by taking it off the market. Your Honors, I heard counsel say that Fulgenzi is on point to this case. It's not. And I heard counsel say that Fulgenzi was a failure to communicate case. It was not. We think Fulgenzi was wrongly decided. But what Fulgenzi said was there's a narrow gap between Menzing and Buckman. There's a narrow gap claim. And that narrow gap claim is a claim that says you didn't update the label and my harm as a plaintiff came from the fact that you did not update the label. That's not what the plaintiffs allege here. In fact, the plaintiffs routinely in their complaint, and certainly on the issues on appeal, talk about a failure to communicate that is a process or action that is different from updating the label. If you look at pages 32 to 34 of the brief, and 37, where the plaintiffs describe what activities give rise to their claim, they routinely say we are talking about things other than updating or revising the label. We're talking about communicating that label in some other fashion. As a matter of fact, at paragraph 46 of their complaint, the plaintiffs, and that would be the record 77, the plaintiffs say that merely making the change to the label is not enough if you don't send it out. So the plaintiffs' claim here. But the question is not whether it's enough in the end. The question is whether it's enough for preemption. And that's an important distinction. I'm looking at paragraph 87. Each of the drug company defendants negligently and carelessly breached the above-described duties, which are described at length, by committing negligent acts and or omissions, including but not limited to that several of the generic defendants were negligent in failing to include information present in the label for the RLD and in failing to implement changes to their own labels to ensure that the information they provided was current and not outdated, and goes on to explain it took them, in some cases, several years. Why is that not Fulgenzi? It's not Fulgenzi for this reason, Your Honor. It's one. It's in subparagraph L, I believe. It's in a litany. The duties that they talk about in paragraphs 83 through 86 are failure to communicate and take the product off the market. In other words, they aren't saying that the duty is and that our injury flows from the fact that you didn't update the label. They're saying it comes from the fact that once you didn't update the label or communicated in some fashion or some other fashion, tell people about this 2004 warning change or take the product off the market. See, the labeling that goes out from generic drug companies, this is why they did what they did. This is why they stated the claim. It goes on containers that go to warehouses. Those then go to the pharmacies. Every one of the claims that they talk about is a failure to communicate the risk or the alleged risk to physicians and consumers. Physicians and consumers do not see generic labels. That's part of what counsel alluded to. Counselor, when any of us get a prescription filled, we get the bottle with the information on it, and then we get printouts on and on that give us all of the dangers and all of the problems, and that's the notice. And those printouts are based on what you have put on the labeling information that you provide to the pharmacy. Your Honor, that's not quite correct. The patient education monographs that you get are prepared by other companies. They're prepared by third-party providers that are not the pharmaceutical companies. There's no evidence that they go and get generic labels and do that. So I guess my problem is now we're talking about evidence, and that's not the question before us. The question is, have they stated a Fulginzi claim? And when they allege what I read, under notice pleading, it sounds a lot to me like what Fulginzi's asking. And it may be, I'll grant you it's narrow. I mean, Fulginzi says that. But the question is, is whether it's stated or not, not whether you disagree with the evidence or, you know, how it's the— I don't get to testify, nor do you. So explain to me again why, in that context, Fulginzi doesn't create a limited cause of action. And I'll get to it in a moment, and I'll do it in inverse order. I don't think Fulginzi should create a cause of action at all. But in Fulginzi, what the plaintiff alleged specifically was, and the panel made a big deal about this, was that your failure to update the label, that act, is what proximately caused injury. If you look at what the plaintiffs are alleging, they are not alleging that it was the updating or the alleged failure to update the label. They are alleging that it's the failure to communicate, really the approved warnings, to physicians and to consumers. So the proximate cause allegations are different in this case than they were in Fulginzi. And again, not only is that true in the complaint, but if you look at what they pursued on appeal here, they never mention the word failure to update as their issues on appeal. They don't describe that in the summary of their argument. On 32 through 34, where they describe their claims, they talk about it being things different from updating the label, whether it's strict liability, whether it's negligence. I could go through, but you'll see it there. It is very clear that the claim they are trying to articulate is a failure to communicate claim, not a failure to update claim. The Morris Court down in the Fifth Circuit handled that differently. Guarino and the Eleventh Circuit recognized those were different. And failure to communicate claims, as Mr. Odheimer told you, have been routinely barred by courts. It's barred by Menzie and it's barred by Smith. Your Honor, I see I'm out of time, and I know this has been a long morning for the panel. I do want to ask one thing of the court. If the panel is inclined to look at Fulginzi, we don't think it's applicable here. We would ask that in light of what we believe are differing, conflicting decisions between the Smith panel, which said that it looked at all the issues, including the failure to update claim, on supplementary briefing. But I don't think it said that. I think Smith had the supplemental briefing done, but the opinion doesn't reference the issues raised in supplemental pleading, and that narrow window is exactly what Fulginzi addressed. I know that Fulginzi said that, Your Honor, but I don't see how the Fulginzi panel can come to that conclusion when after— It's a published case. Well, but so is Smith. And when the Smith panel says that there was not only supplemental briefing, but then there was a petition for rehearing raising it again, the failure to update saying, hey, you guys missed the point. And on that order, the panel has further reviewed and concludes that the issues raised in the petition were fully considered upon the original submission and decision of the court. That include—the submission to the court included the supplemental briefing on the failure to update claim. So that order—I'm looking right at the order right here. Your argument would require us to tell another panel that published a decision that they were wrong. What I am suggesting and requesting, Your Honor, is this is a very important issue. We think that there are—there is a conflict between Smith and Fulginzi. We think there are issues with the Fulginzi panel—excuse me, Fulginzi decision, pardon me, that warrant another look. You know, in one part of the opinion where the court says the adequacy, the federal statutes in a breach of federal duty doesn't have anything to do with the adequacy of the warning in one section of it, and then at the end of its opinion says, but you can use the breach of the duty to prove up the adequacy. I mean, it says exactly that. There is that conflicting language. We think it warrants another look, and we— Is that warranting another look? Are you asking to brief on it? Explain to me what— Well, I think it would have to be—I think it would have to be en banc, and we would obviously want the opportunity to brief that, yes. I guess you're—maybe are you implying that we could disregard Fulginzi on the basis that it changed, tried to change—one panel tried to change the Smith decision, and the Smith decision was earlier, so it controls? Is that what you're arguing? Well, I think what the Fulginzi panel said in its opinion was that that issue was not dealt with by the Smith panel. Right. You're saying that the evidence would show that the Smith panel did consider it. Yes. Okay. Yes. All right. Thank you. Thank you very much. Good morning. Good morning, Your Honors. Hank Bullock for the Brand Defendants. May it please the Court, I think that this Court's prior decision two years ago in Smith is highly instructive and frankly deals with almost every issue at play as it pertains to the Brand Defendants. Smith was nearly identical to this case with one minor, and I would argue, meaningless distinction. The plaintiff in Smith was from Kentucky, whereas the plaintiffs here are all Tennessee residents. But for that distinction, the claims are the same. They allege the same injuries from ingestion of generic drugs, and they all concede that no use of a brand product ever occurred. Further, the law as it was found by this Court in Smith under Kentucky law is identical to the applicable law here under Tennessee law. Each state has a product liability act which clearly defines what product liability actions are. The language is almost identical, and this Court has already held that that very language, any cause of action arising out of personal injury caused by the warning, instruction, or labeling of a product, this Court has already held that that very language clearly encompasses the very claims, whether they are based in negligence, in warranty, or in fraud, that are brought by the appellant here. Further, as this Court noted under Kentucky law in Smith, similarly, there is a product identification requirement under Tennessee law. It is imposed both by the Tennessee Product Liability Act, the statute, as well as the Tennessee case law. And in fact, that product identification requirement, the threshold requirement that the plaintiff prove she used a brand defendant's product before asserting claims for redress, that very product identification requirement was recognized and applied under Tennessee law by this Court in its Barnes decision. So in that respect, Your Honor, if anything, I would argue that on product identification grounds, this Court's prior ruling is instructive and requires a dismissal here. How do you respond to your opposing counsel's argument that there are statutory provisions that indicate that there's no requirement of privity? Your Honor, with all due respect to my adversary, I think that that is a bit of a red herring. We're not arguing that privity is required. We are not arguing that there has to be a contractual buyer-seller relationship. And Ms. Petty is correct that there are cases that say privity is not required. But the application or lack thereof of privity there is to say that even if you didn't purchase a product from the manufacturer, but you were either a family member of someone who did or you're the household guest of someone who did, and your injury was caused by that very product, then yes, of course you still have a cause of action. So if I invite you to dinner and let's say my oven explodes, even though you didn't purchase the oven, you were still injured by that oven in my house, you would have a right to a cause of action against the manufacturer. That's not at all the case here. The plaintiffs didn't get any injury caused by a brand product. They concede throughout their papers below. In their papers at this court and even in argument today, they were very clear. They have only ingested generic product. They have already said as a matter of causation that what caused their injuries was a generic product. In that respect, Your Honor, privity or no privity? What we're talking about here is product identification, and that is what is required. That's what the Smith court said. That's what the court below said, and frankly, that's what almost every court, including every federal appellate court to address this issue, has said. Now, if your argument is based on proximate cause, then don't you fall into Tennessee's doctrine of being within the range of foreseeability? There's a fairly strong Tennessee doctrine about being within the range of foreseeability in proximate cause cases. I think what you're referring to, Your Honor, is the concept of duty, and the plaintiff's argument here that if there isn't a product identification requirement, you then have to look at whether there is a duty to sustain the claim. And I think, again, this court's decision in Smith addressed that separate argument when it held that one brand manufacturer does not have a duty to warn about a competing generic product. This court itself recited that very doctrine under Tennessee law in the Barnes case when it said one manufacturer does not have a duty to warn about another manufacturer's product. But in any event, even if there is foreseeability, that in and of itself isn't enough to create duty. It's not enough to create proximate harm. There are still other factors at play. Most notably, is there a relationship between the defendant and the plaintiff? And in this instance, Your Honor, this court has already founded Smith. Multiple other courts have held the same thing. There is no relationship between a brand defendant on the one hand and a plaintiff who takes someone else's competing product on the other. And as all of the case law that the plaintiffs cite, including the cases that they submitted, I believe, just Monday in their Rule 28J submission, as each of those cases makes clear, before that liability, whether it's on proximate cause, foreseeability, whether it's a product liability action or some other theory in tort, always requires the existence of a duty. Excuse me, the existence of a relationship. And explain to me the answer to the argument on the other side. In normal proximate cause and foreseeability cases, there is a distinction between the parties that we're talking about, between a manufacturer of a product, for example, and a user of a product. But in the drug arena, there is not that distinction because you are not allowed, and you know you're not allowed, as a generic drug producer to change the labeling. The generic drug producer is, as we say in the South, hung with the labeling that the brand manufacturer does. So conceptually, if you undertake reasonable foreseeability in the context of a drug case, you have to impose upon that the drug laws that are the very reason the generic defendants here are able to say, not me, because they're relying on you.  So explain to me why that doesn't make a distinction. Well, Your Honor, two points, if I may. And I see that my time has expired. My first point is that that very argument has already been addressed by this court in Smith. To be clear, and just to sort of summarize, the Smith case was argued pre-mensing. It actually then requested amicus briefing from the Solicitor General. It waited for the mensing opinion, and then there were a host. And I won't get into the details. I know that the generics and the plaintiffs have argued about what was in the supplemental briefing. But it is clear that the supplemental briefing contained and that this court considered what, if any effect, mensing and the generic labeling regulations had on claims as against brand manufacturers. And this court already stated on multiple occasions, both in its opinion as well as when it refused to certify after the fact, that mensing does not in any way change, that the issue is the common law as it pertains to a manufacturer of brand-defendant drugs. And it said in that opinion what the previous law had said, that it's simply not a basis for a duty that the generics may or may not have to use the brand-defendant's label. And so in that respect, I would argue, Your Honor, that the mensing point that the generics are allegedly, as you said, hung with the brand labels, that doesn't change the analysis whatsoever. The analysis is, did you take a brand-defendant's product? If you did, then you may have a cause of action. If you didn't, then either under the Product Liability Act and the product identification requirements or under the common law misrepresentation in duty cases, you don't. The other argument that I would make, Your Honor, is that let's be clear as to what the federal regulations state. They state that a brand manufacturer must have a label and it must supply that label with its product, full stop. Whatever the regulations require of the generic manufacturers to do, that is an independent action and an independent course of conduct that only the generic manufacturers can participate in and can control. The brand defendants have no control over what label the generics use. They don't know if or when they make changes to their label or what they'll affix to their product. So in that respect, Your Honor, I think there is even an argument that, no, it's not foreseeable to the brand name manufacturers what the generics will or won't do. That's the very argument. That's a little disingenuous, isn't it? Because you know the law. The FDA requires that generics conform to the label of the brand. I know the law, Your Honor. All I'm saying is I don't know what the generic manufacturer will or won't do, and I think that's the point that Ms. Tenney made. But you know what the law requires them to do. Of course, Your Honor, but again, I would go back to this. And you know what they can't do. I know what they can't do. You just don't know what they did do, which really doesn't make a difference if their no liability stance is the law. Your Honor, that may or may not be the case. But what I think doesn't make a difference here is whether those claims stand or fall against the generics. This is a simple case, as I said. This Court already addressed the very issues in Smith. There's no reason to depart from those issues. Right. I mean, overall, there is a basic unfairness here, isn't there? Sort of a catch-22. I mean, they don't have a claim against the generics because of preemption. They don't have a claim against the brand because of the Tennessee State product liability. So they don't have a claim against anybody. And yet they've been injured. Your Honor, that is the very nature of preemption, and it's not my place to speak to that. That's an issue with the federal regulations. And, in fact, that's an issue that, as I understand it, Congress has tried to and the FDA has said that it will try to fix. And so in that respect, if there is an unfairness, that is the way it should be addressed, through FDA regulations, which I understand are at least going to be promulgated sometime this fall. But the Tennessee law is clear. It's just like the Kentucky law at issue in Smith. Lack of product identification, lack of duty. Each serves as an independent basis to affirm the trial court's dismissal of the claims against the brand defendants here. Okay. Mr. Bullock, you're out of time unless there's other questions. Thank you, Your Honor. Thank you. Five minutes rebuttal. May it please the Court. Let me start with the brands. The brand defendants and RLD holders have not produced a single case in this entire litigation that says that for a negligent misrepresentation claim, not for a regular product liability case, but a negligent misrepresentation claim, that there is any sort of product identification that is required. Smith doesn't say that. Barnes doesn't say that. Barnes isn't even a negligent misrepresentation claim. It talks about multiple product manufacturers. And in that case, the warnings were held adequate as a matter of law. So it has no application here. Smith has no application here because it was a pre-Bartlett case that was decided under law, which we discussed in some detail, is very different. It has different manufacturer and seller language, and there is no statute addressing privity. And so as a result, those cases don't bind here. I'd like to respond to sort of finish up on this discussion that we had before I sat down on the legal grounds. The issue here is not whether you embrace Conte because those cases don't bind this court. The question is whether there are any legal grounds under Tennessee law for immunizing from the ordinary operation of misrepresentation law, RLD holders and name brand manufacturers, particularly in light of the duties that have been discussed in the last session and in light of the generic substitution laws and the post-mensing regime. That is a question that they did not answer. Why do you immunize them above all else? And that's a question that I think this court is going to have to answer that you can't. In going back to the generic questions on the issue of preservation, on page 33 of our brief, we specifically talk about appellants, also alleged that generic appellees fail even to communicate or incorporate the actual approved labeling. At page 39 to 41 of our brief, we talk generally about the idea of updating and keeping your labels current. In addition to the pleadings that Judge Stranz described, at paragraph 45 we specifically talk about failure to update. With regard to Fulgenzi, it is directly on point. Judge Stranz is correct that it filled the gap that Smith didn't address. Smith dealt with a different kind of claim and not this gap claim, and they essentially admit that that's the case. But you admit you haven't pled it? No, I don't admit that at all. I just described exactly where I had pled it. Okay. Those were the paragraphs that I listed, and Judge Stranz has also talked about where we talk about failure to update. He also mentioned the question of Buckman. When Buckman has nothing to do with this case, the generics have only raised Buckman here in connection with a claim based on the alleged failure to go to the FDA to seek approval for a labeling change, and it wasn't discussed or connected with a failure to update or communicate claims. Again, paragraphs 45, 47, 87 that she's described and in the brief. Mensing said that the question for impossibility preemption is whether a private party could independently do under federal law what state law requires of it. In the case of a failure to update or failure to communicate the new labeling that has been updated, there is no question of impossibility here. What Bartlett says, what Mensing says, is you can use, or generic manufacturers can use the CBE regulations, that is change their labels prior to seeking FDA approval. The basis of the lack of preemption in the Levine case, you can use CBE regulations the moment that the name brand changes their labels, and so there is no impossibility preemption in that instance. What's appropriate for the court, I think, to consider in all of these cases, is that there really is a requirement after Bartlett, and I think this applies to the Smith case as well, that you have to look at the duties involved. You have to look at the specific claims. The Smith case, I think, is fine, but as I say, it only goes so far as the duties there. The Conte case talked about the duties in California. The Weeks case talked about the duties in Alabama. Kellogg case, I think, was in Ohio. Each of these cases, many of these cases have been decided on different issues. All, I will say, of the post-Mensing cases, or virtually most of the post-Mensing cases have been decided on grounds of or have actually been decided on grounds of allowing a duty on the part of the brand name manufacturers. But the issue is to look at the specific claims, and when you look at Tennessee law and the duty that it imposes, both with its generic substitution laws and the federal duty with regard to the post-Mensing regime, I think that you can see that there is a duty under the law, and there's no impediment under law, and, in fact, there is a statute that says that you don't impose the requirement. They've talked about it in terms of privity or in terms of product identification to try to make a distinction between privity. What they're talking about is some sort of blanket requirement, either under the TPLA or under law or as a basis of preemption, that would bar the normal operation of the rules regarding negligent misrepresentation. Any further questions? All right. Okay. Thank you. The case will be submitted. You may adjourn the court.